**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:24-cr-00406-RC |
| | ) | |
| Plaintiff, | ) | JUDGE RUDOLPH CONTRERAS |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAYON WHITE, SR., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS THE INDICTMENT BECAUSE IT FAILS TO ALLEGE
CONDUCT ON COUNCIL MEMBER WHITE'S PART THAT CONSTITUTES AN
OFFICIAL ACT WITHIN THE MEANING OF THE BRIBERY STATUTE**

Defendant Trayon White, Sr., through undersigned counsel, W. Gary Kohlman,

respectfully moves the Court to dismiss the Indictment in this case because it fails to allege

conduct that constitutes an "official act" within the meaning of 18 U.S.C. Sec. 201(b)(2)(A)(B)

and (C)(Bribery). In support of this Motion counsel states the following:

**INTRODUCTION**

Council member Trayon White, Sr., is charged with a one count indictment that alleges he

received four bribe payments in violation of 18 USC 201, the so-called Bribery

statue. According to the indictment, on June 26, July 17, July 25 and August 9, 2024, White

received payments from CHS 1 (a confidential informant) in return for White's commitment

to be 'influenced in the performance of any official act" and to "assist Company 1 and Company

2 extend their contracts at the ONSE and DYRS for VI services." (Exhibit 1 Paragraph 69). In

addition, the indictment alleges – but does not formally charge – that White received a bribe

from the same CHS on an unspecified date in either 2019 or 2020 to influence pending litigation

that the CHS had with the District of Columbia over the status of one of the CHS' contracts.

1

To support the allegation of bribery, the Indictment lists four Government Employees that, in the government's telling, White pressured to assist the CHS in maintaining or extending his contracts. The indictment, however, is silent as to whether White did, in fact, contact any Government employee or attempted to influence any Government employee as to the status of the CHS's contracts.  Indeed, the discovery produced by the Government and our ongoing investigation reveal that White made no attempt to influence any government employee that had authority over any of the CHS's contracts.  At the very most, it appears that in July 2024 White attended a meeting with two government employees who were familiar with CHS's contracts with the District of Columbia, but that White made no effort to pressure either employee as to whether the contracts should be extended.

For reasons that follow, we submit that the indictment does not sufficiently set forth the elements that are necessary to prove a case of bribery.

## LEGAL STANDARD

To successfully prosecute a violation of the bribery statute against an elected official, the Government is required to prove that the elected official committed an "official act" in return for something of value.  *McDonnell v. United States*, 136 S.Ct. 2355, 579 U.S. 550 (2016). Section 201(a)(3) defines an official act as: "any decision or action or action on any question, matter, suit, proceeding or controversy that may be pending or may by law be brought before a public official." Once it has been determined that an "official act" has been identified, the government must establish that the public official made a decision or took action on the question, matter, cause, proceeding or controversy, or agreed to do so.

In overturning the conviction of Robert McDonnell, the former governor of Virginia, on Bribery charges, the Supreme Court addressed the issue of what constitutes an "official act under 18 USC § 201(a)(3) and held that an official act involves the following: 1) that "a decision or action on a 'question, matter, cause, suit, proceeding or controversy;'" 2) that "the 'question, matter, cause, suit, proceeding or controversy' must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee;" 3) that "it must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official;" 4) that "to qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so;" and 5) that "the decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official." *McDonnell v. United States*, 136 S.Ct. at 2372, 579 U.S. 550.

The Court also expressly held that "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit that definition of 'official act.'"

## **ARGUMENT**

Prior to 2014, the government took an expansive view as to what constituted an official act. In the government's view, nearly everything a public official accepted – from campaign contributions to lunch – counted as a quid; and nearly everything a public official did – from arranging a meeting to inviting a guest to an event – counted as a quo.

The Supreme Court in McDonnell rejected that expansive interpretation of the bribery statute.  The following is clear from *McDonnell* that even when a public official has received something of value from a constituent, lobbyist or private citizen:

1. On behalf of a constituent, lobbyist or private citizen, an elected official can set up and attend a meeting with a public official who has authority over a matter affecting the constituent, lobbyist or private citizen and he can relate back information he learned at the meeting.

2. On behalf of a constituent, lobbyist or private citizen, an elected official can express an opinion as to what he thinks is the proper outcome of a matter that is pending before a government agency and demonstrate his support for the constituent, lobbyist or private citizen.

In this case here is no evidence that White took a single step that would violate the bribery statute. The most that the Government will be able to prove is that White attended a single meeting with two government employees who were involved with one of the CHS's contracts.  At no point in that meeting did White express his view on the status of the contract (which would have been permissible) and at no time during the meeting did White attempt to pressure the employees on what decision they should make as to the confidential informant's contract.

The defense recognizes that to secure a bribery conviction a public official is not required to take an action on a question, matter, cause, suit, proceeding or controversy; it is enough that the public official agrees to do so.  See *Evans v. United States*, 504 U.S. 255, 268 (1992).  But *Evans* is no help to the government in this case.  To be sure, the confidential informant followed

a script prepared by the government that was designed to steer White into making commitments to speak with government employees about the CHS's contract.  But while that was the mindset of the confidential informant, White's mindset was otherwise.  It is clear from the dialogue between White and the confidential informant as set forth in the indictment that White never committed to doing anything on behalf of the confidential informant, and aside from attending single meeting he did nothing.

White's words to the confidential informant in the four encounters set forth in the Indictment do not establish that he agreed to commit an official act within the meaning of the bribery statute.  In the first recorded encounter on June 26, the CHS asked White to ascertain whether his contracts would be renewed. (Exhibit 1, Paragraph 28). Nothing in *McDonnell* or the bribery statute precludes an elected official from inquiring into the status of a constituent's contract.  In the second encounter on July 17 White told the confidential informant that he was trying to set up a meeting with Government employee 3 to tell her he was "supportive" of extending the CHS's contracts.  Again, under *McDonnell*, we know that there is nothing wrong with an elected official expressing support for a matter a constituent has pending before a government agency.

Similarly, prior to a third meeting with the CHS on July 25, White texted the CHS to relate that "he wanted to introduce CHS I to an individual who could help them get into the mental healthcare space."  (Exhibit 1 Paragraph 49) It is not illegal for an elected official to introduce a constituent to an agency head. At the July 25 meeting, White reported to CHS that he had met with Government Employee 4 and he was "on board with it" (presumably extending the CHS's contract).  Nothing in *McDonnell* prohibits an elected official from ascertaining the status of a constituent's contract and reporting that information to the constituent.

Prior to the fourth encounter between the CHS and White on August 9, the CHS texted White "to set up a meeting to get an update on the status of the contract renewals." (Exhibit 1, Paragraph 24).  There is nothing improper about an elected official providing information to a constituent about the status of a matter the constituent has pending before a government agency.

During the August 9 meeting, it is obvious from the dialog that White was giving the CHS the runaround about whether he had contacted any government official about the status of the CHS's contracts. At two early meetings, White had told the CHS that he had met with Government Employee 4 and Employee 4 was supportive of CHS' contracts.  At the August 9 meeting, White couldn't recall Government Employee 4's name or even whether he had met with him. Based these exchanges it was obvious that White never intended to use his influence on behalf of the CHS.

During the August 9 meeting, according to the indictment,  White told CHS that he had met with Government Employee 3 (an acting agency head) and told him/her that if he/she didn't support me and what I'm trying to with my providers "I can't support him/her."  Putting aside for a moment that Government Employee 3 says that this conversation never occurred, White expressing support for a constituent's services to an agency head is precisely what Governor McDonnell did on behalf of businessman Williams.

We conclude with three points.  First, White himself had no authority to make a decision that would affect the CHS's contract.  Second, not a single Government official is going to testify that they were pressured by White to act favorably on the CHS' contracts. And third, White's words alone make clear that he committed himself to do no more than ascertain the status of CHS's contracts and express his support for the contracts.

CONCLUSION

For the reasons stated above and any others that may appear to the Court, Counsel respectfully requests that the Indictment against Trayon White, Sr., be dismissed for failing to allege conduct the constitutes an official act within the meaning of 18 U.S.C Section 201(b)(2)(A)(B) and (C).

Respectfully submitted,

/s/ W. Gary Kohlman

W. Gary Kohlman
Counsel for Defendant Trayon White, Sr.
DC Bar No. 177527
1845 R Street, NW
Washington, DC 20009
(202) 497-4468
gwkohlman@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January 2026, this **MOTION TO DISMISS THE INDICTMENT BECAUSE IT FAILS TO ALLEGE CONDUCT ON COUNCIL MEMBER WHITE'S PART THAT CONSTITUTES AN OFFICIAL ACT WITHIN THE MEANING OF THE BRIBERY STATUTE** was served via electronic mail on chambers, counsel of record and unrepresented defendants, by ECF/CM filing.

Respectfully submitted,

/s/ *Warren Gary Kohlman*

*Counsel For Defendant Trayon White, Sr.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:24-cr-00406-RC |
| | ) | |
| Plaintiff, | ) | JUDGE RUDOLPH CONTRERAS |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAYON WHITE, SR., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PROPOSED</u> ORDER**

Upon Consideration of Defendant Trayon White, Sr.'s Motion to Dismiss the Indictment Because It Fails to Allege Conduct on Council Member White's Part That Constitutes an Official Act Within the Meaning of The Bribery Statut,

On the _____ day of _____ 2026, it is hereby

ORDERED, that Defendant Trayon White, Sr.'s Motion is GRANTED.

_____
Hon. Rudolph Contreras
UNITED STATES DISTRICT JUDGE