IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No: 1:24-cr-00406-RC |
| ) | |
| Plaintiff, ) | JUDGE RUDOLPH CONTRERAS |
| ) | |
| vs. ) | |
| ) | |
| TRAYON WHITE, SR., ) | |
| ) | |
| Defendant. ) | |

SUPPLEMENTAL OPPOSITION BY TRAYON WHITE
TO GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE ENTRAPMENT DEFENSE

Defendant Trayon White, through undersigned, newly-engaged counsel appearing *pro hac vice*, respectfully files this Supplemental Opposition to the Government's motion in limine to preclude his entrapment defense, which is part of the Government's Omnibus Motion In Limine (ECF No. 24), incorporating by reference the opposition brief filed by Mr. White's former counsel at the Federal Defender (ECF No. 26), and replying to the relevant part of the Government's Reply In Support Of Its Omnibus Motion In Limine re: entrapment defense (ECF No. 27).

INTRODUCTION

The Government, having stung District of Columbia Ward 8's councilmember by sending his longtime friend to hand him thousands of dollars in unsolicited cash, now seeks to preclude any entrapment defense Mr. White might have. The Government claims that Mr. White was required to have his entrapment ready and to proffer it to the Court *months* before trial, upon pain of losing his ability to put on that defense. However, there are various policy reasons why the cases cited by the Government upholding this procedure are confined mostly to the Seventh Circuit, and why even courts in that circuit exercise great caution before testing entrapment

defenses like this before criminal trials – and then, only as the exception to letting the jury decide. These policy reasons manifest themselves in full here in Mr. White's case, where making him "show his cards" before trial – especially this far before trial – is fundamentally inappropriate. As the Court will see, given the still-ongoing factual investigation by both sides and still-ongoing discovery in this case, the Government is indeed in no position to demand now that Mr. White explain how he came to take money on June 26, 2024 from his friend, also known as "Confidential Human Source 1" or "CHS 1."

It is undisputed, of course, that for the jury to be instructed on an entrapment defense, Mr. White first will need to make a sufficient showing of inducement, as the courts have given meaning to that term.

But, rather than setting forth below the proffer of "inducement" evidence that the Government believes is required by now -- a notion the defense roundly rejects -- undersigned counsel hereby reserves making any case for entrapment at the time and in the manner that this Court orders.

SUPPLEMENTAL STATEMENT OF FACTS

Mr. White has come to this criminal case with **no** criminal history and has been serving on the D.C. City Council representing Ward 8 since 2016, in the fishbowl of local politics.

Count 1 of the single-count Indictment charges Mr. White with violating the federal bribery statute at 18 U.S.C. § 201 between the dates of June 26, 2024, and August 18, 2024, by receiving payments from CHS 1 in exchange for his official acts as a councilmember. The Indictment also states, in introductory allegations about a time long before CHS 1 became a government informant, that he and Mr. White also committed corrupt acts together in connection with government contracts back in 2019 and 2020. After Paragraph 25, the Indictment jumps

2

from 2020 all the way to late June 2024, to a moment where the recently-flipped CHS 1 is wired up for the first time with a video camera by the FBI and is ready with a fictitious script to hand Mr. White cash and to solicit assistance from Mr. White in his D.C. government contracting.

CHS 1's statements to the Government disclosed in discovery[1] have shown that, by the time of the undercover sting conduct alleged in Count 1, CHS 1 had been Mr. White's friend for **14 years**, having met Mr. White through CHS 1's family member. As of June 5, 2024, however, CHS 1 was facing serious charges of federal program fraud, was meeting with the FBI and confessing to various kinds of crimes and was offering his cooperation in bringing charges against a wide range of other persons he knew. CHS 1 subsequently sought a meeting with Mr. White via text messaging, calling Mr. White "big brother," and texting him "I really need to see you." Moments after Mr. White entered CHS 1's car on June 26th, CHS 1 suddenly foisted $15,000 into Mr. White's hands -- **before** a verbal back-and-forth had taken place between the two about what all CHS 1's money was supposed to be for, let alone words indicating agreement.

So, indeed, after reviewing this information in the discovery production, Mr. White's undersigned counsel, newly engaged counsel seeks to leave open the possibility of putting on an entrapment defense at the trial set to begin on March 24, 2026. Defense counsel has so far had approximately three months to try to access and digest the more than a terabyte of data produced by the government in discovery, including scores of video and audio recordings, plus Mr. White's own cellphone's seized contents of more than 15 gigabytes. Counsel also is pursuing in other ways his duty to investigate his client's case, including the possible affirmative defenses.

---

[1] The factual assertions in this factual summary paragraph are all from the basic documents produced in discovery including grand jury testimony, FBI reports, screenshots of text messages between CHS1 and Mr. White, and of course the video and audio recording of their meeting on June 26, 2024.

3

Yesterday, on January 21, 2026, the Government disclosed to undersigned counsel that it still plans to produce **new** FBI reports about the statements of CHS 1 to the Government, and is finalizing a report on **new** contents of cellphone communications between CHS 1 and Mr. White that the FBI had imaged from CHS 1's phone.  The Government committed to producing all of these new items to Mr. White in the near future.

There is thus information about Mr. White's communications with CHS 1 that the Government undeniably **did not know** when it brought these charges in September 2024, and there is such information that it will never know.  In this respect, both CHS 1 and the FBI case agent testified in grand jury that CHS 1 did **not** record all of the phone conversations he had with Mr. White while signed up as a source and working under the direction of FBI handlers.

## ARGUMENT

No controlling authority, and no authority that it would be remotely appropriate for this Court to apply to the instant motion in limine, requires Mr. White to have proffered his entrapment defense (or the "inducement" prong of it) before trial -- let alone this long before the trial. The Court should allow Mr. White the time in the already short run-up to trial in March to investigate and marshal such a complicated defense.  The Court should reject the reasons advanced by the Government for judging Mr. White's entrapment defense sufficiency now, which would invade the province of the jury as the finder of fact.

The Government's Reply Brief cites authority reaching back decades in support of its proposed procedure of litigating the entrapment defense before trial, on the government's motion in limine to preclude the defense. *See, e.g., United States v. Mayfield*, 771 F.3d 417, 440 (7th Cir. 2014); *United States v. Plowman,* 700 F.3d 1052, 1057 (7th Cir. 2012); *United States v. Blassingame,* 197 F.3d 271, 279 (7th Cir. 1999).  However, the Government has cited no cases in

the D.C. Circuit or this Court as being worthy of consideration for imposing this procedural hoop for Mr. White and undersigned counsel to jump through.

The first glaring omission by the Government in briefing its out-of-circuit line of cases is that: "The issue of whether there is sufficient evidence of entrapment to support submission of that defense to a jury **typically** arises after the evidence has been received at trial." *Santiago-Godinez v. United States,* 12 F.3d 722, 727 (7th Cir. 1993) (emphasis added). "[W]hether or not an entrapment defense is available to a defendant is typically not amenable to pretrial resolution." *Id.* As another panel concluded: "A pretrial determination of the sufficiency of the evidence ... is the exception rather than the rule." *United States v. Johnson,* 32 F.3d 304, 307 (7th Cir. 1994).

Also conspicuously absent are the specific policy concerns and reservations mentioned in the Seventh Circuit opinions allowing in **some** cases pretrial litigation of the entrapment defense, and by later courts citing those opinions. As the Seventh Circuit itself cautioned, most times the sufficiency of the defense is not amenable to pretrial resolution because whether entrapment occurred is a factual issue, "the defense of which is intertwined with the issue of intent and is often based on credibility determinations, which are traditionally reserved for jury resolution." *Id.* Similarly, the court in *Mayfield* warned that entertaining the government's pretrial motion to preclude the defense "carries an increased risk that the court will be tempted to balance the defendant's evidence against the government's, invading the province of the jury," and can result in "subtly raising the bar for presenting entrapment evidence at trial." *Mayfield*, 771 F.3d at 440-41. Mr. White has a constitutional right to confront CHS 1, an admitted and prodigious criminal fraudster, and test his credibility at trial before the Court rules whether to instruct the jury on his entrapment defense.

In one recent pretrial ruling, the district court in *United States v. Triplett-Armstrong,* No. CR-22-91-RAW, 2023 WL 2018577 (E.D. Okla. Feb. 15, 2023), agreed with the defendant not to try to assess pretrial the sufficiency of the entrapment defense, reasoning that unlike their civil counterparts, criminal proceedings have no extensive discovery and summary judgment procedures requiring both sides "to lay their evidentiary cards on the table before trial." *Id.* at *2*. Without "summary judgment"-type motion practice, it ruled, the entrapment defense's sufficiency must await trial. *Id.* It is true to the constitutional rights of the accused to require the Government to lay its cards on the table in a criminal case, but not for the accused to have to do so, with rare exceptions.

Apropos of the instant case, the court in *Triplett-Armstrong* also referenced the fact in the case before it that "the conversation between the defendant and the confidential source setting up the deal was not recorded . . . . The confidential source's testimony at trial is essential to making any determination." *Id.* Here, CHS 1 admittedly did not record all of his conversations with Mr. White while acting as an FBI informant against him, meaning that the Government is not in a position to explain with independently verifiable evidence all the influences that its criminal informant had upon Mr. White's actions during the operation. In fact, as the Government admitted to the defense yesterday, it has only belatedly and on a limited basis imaged CHS 1's cellphone. That is to say, the Government is **still** investigating the nature and extent of CHS 1's communications with Mr. White, and Mr. White has not yet had the benefit of that discovery. Then, in addition, there is whatever light that independent investigation by Mr. White over the two months remaining before trial can shed on this question.

CONCLUSION

The Court should reject the proposal of the Government to require a pretrial proffer of Mr. White's entrapment defense, which it would impose based on case law predominantly from another judicial circuit, under procedural conditions that would be very unfair indeed to Mr. White.

Were this Court to disagree, it should at least not try to assess the sufficiency of Mr. White's entrapment defense based on the current record, where no such requirement in this circuit has ever existed before.

WHEREFORE, the defendant respectfully requests that the Government's motion in limine to preclude his entrapment defense be DENIED.

Dated:  January 22, 2026                                  Respectfully submitted,

/s/   Warren Gary Kohlman
Warren Gary Kohlman* (DC #177527)
1845 R Street Northwest
Washington, DC 20009
202-497-4468
Email: gwkohlman@gmail.com
* Pro hac vice

*Counsel For Defendant Trayon White, Sr.*

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January 2026, this **SUPPLEMENTAL OPPOSITION BY TRAYON WHITE TO GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE ENTRAPMENT DEFENSE** was served via electronic mail on chambers, counsel of record and unrepresented defendants, by ECF/CM filing.

Respectfully submitted,

/s/ *Warren Gary Kohlman*

*Counsel For Defendant Trayon White, Sr.*