### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **Crim. No.: 24-CR-406 (RC)** |
| | : | |
| | : | |
| **TRAYON WHITE, Sr.** | : | |
| | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS THE INDICTMENT AS
### DUPLICITOUS AND TO PRECLUDE CERTAIN EVIDENCE

The United States, hereby, opposes the defendant's motion to dismiss the indictment as duplicitous and to preclude "other crimes" evidence.  ECF # 39.

### I.    Introduction

First, the indictment is not duplicitous.  Instead, the defendant is properly charged with one count of bribery [ECF # 12, at 29-30]; the count is based on a bribery scheme.  *Id.* at 7-29.  The defendant's claim that such charging is duplicitous is baseless.  "Duplicity is the joining in a single count of two or more distinct and separate offenses."  *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999); *see also United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C. Cir.1982) (same).  Nevertheless, several acts may be charged in a single count, if the acts "represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant."  *United States v. Klat*, 156 F.3d 1258, 1266 (D.C. Cir. 1998) (internal quotation omitted).

Second, evidence regarding the defendant's acceptance of a bribe from the government's

confidential source (CW) in 2019 [ECF # 12, at 5-7] should not be excluded. That bribe is inextricably intertwined with the charged offense; and, in any event, it would be properly admissible pursuant to Fed. R. Evid. 404(b).

## II.    The indictment is not duplicitous.

The defendant misapprehends the nature of the charge against him. He is not charged with a series of separate bribes. Instead, he is charged with a scheme to commit bribery under at a stream of benefits theory. "[T]his theory means that the government does not have to prove an explicit promise to perform a particular act made at the time of payment so long as the general nature of the act to be taken was understood at the time of the payment." *United States v. Skelos*, 988 F.3d 645, 655 (2d Cir. 2021) ("'as opportunities arise' theory of bribery survived *McDonnell*") (internal quotation marks omitted).[1] That was the arrangement here. The indictment alleges that the CW made multiple payments to the defendant over the course of several weeks in exchange for the defendant's agreement to take multiple actions to assist the CW obtain and retain D.C. Government grants over a similar period – without a one-for-one relationship between each payment and a specific action.

A stream-of-benefits bribery arrangement is a kind of scheme. And "it is well established that two or more acts, each of which would constitute an offense standing alone and which

---

[1]    *See also United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013) criticized on other grounds, *United States v. Silver*, 864 F.3d 102, 119 n.88 (2d Cir. 2017) ("[T]he federal bribery and honest services fraud statutes . . . criminalize scheme[s] involving payments at regular intervals in exchange for specific official acts as the opportunities to commit those acts arise, even if the opportunity to undertake the requested act has not arisen, and even if the payment is not exchanged for a particular act but given with the expectation that the official will exercise particular kinds of influence."); *United States v. Ganim*, 510 F.3d 134, 147 (2nd Cir. 2007) (Sotomayor, J.) (emphasis added) ("[w]hile it frequently will be true that particular bribes or extorted payments are linked at the time of the corrupt agreement to particular official acts, that will not always be the case—for example, *because the opportunity to undertake the requested act has not arisen, or because the payment is one of a series to ensure an ongoing commitment to perform acts to further the payor's interests*") (emphasis added); *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998) (holding that "each payment need not be correlated with a specific official act" in affirming federal programs bribery conviction).

therefore could be charged as separate counts of an indictment, may instead be charged in a single

count if those acts could be characterized as part of a single, continuing scheme." *United States v.*

*Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987) (citation omitted), *abrogated on other grounds by*

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Hubbell*, 177 F.3d at 14

(multiple acts of concealment as part of one continuing scheme constitutes one offense).  Each act

that can be viewed as an independent execution of a scheme – here a bribe – need not be charged

in a separate count to avoid duplicity:  "certain situations would justify indictment either in one

count or in separate counts." *United States v. Bruce*, 89 F.3d 886, 889 (D.C. Cir. 1996) (bank fraud

case).  The D.C. Circuit explained:

> [E]ach execution need not give rise to a charge in the indictment. The indictment
> in this case sets forth the existence of a scheme and alleges the scheme was executed
> on at least one occasion. The allegations tending to demonstrate the existence of
> the scheme do appear to be allegations that, if worded and structured differently,
> might constitute additional executions. This is hardly surprising; the actions that
> tend to prove the existence of the scheme will often be the actions actually taken to
> execute the scheme.

*Id.* at 889–90, citing *United States v. Hammen*, 977 F.2d 379 (7th Cir.1992); *see also Mangieri*,

694 F.2d at 1282 (indictment not duplicitous where each count included several misrepresentations

as part of one fraudulent loan application transaction).

Accordingly, charging the defendant with one count of bribery arising from a scheme that

involved multiply payments is not duplicitous.

## III.    The evidence of the defendant's prior corrupt dealings with the CW is admissible.

Evidence regarding the defendant's acceptance of a bribe from the CW in 2019 [ECF # 12,

at 5-7] should not be excluded.  That action is inextricably intertwined with the charged offense;

and, in any event, it is properly admissible pursuant to Fed. R. Evid. 404(b).

## A.      Summary of 2019-Bribe

In 2016, one of the CW's companies entered into a multi-year Human Care Agreement ("HCA"), worth $6,288,806, with the District of Columbia, Department of Human Services ("DHS"). On February 25, 2019, the DHS determined that the company was in default of the HCA and, as a result, terminated the agreement.

During the ensuing contract dispute, the defendant solicited and accepted a $20,000 bribe payment from the CW in return for using his official position as a Councilmember to help the CW resolve the dispute. Specifically, the defendant agreed to use his public position to pressure a high-ranking District Government official to resolve the dispute.

On July 17, 2024, during their discussion of the charged bribery scheme, the defendant and the CW discussed that earlier bribe. Specifically, the defendant mentioned his prior attempt to coerce a D.C. government employee into resolving the CW's contract dispute:  "I have to work and put everything in play. I am just trying to make sure . . . because . . . last time we was [sic] trying to do something like this . . . that shit messed up my relationship . . . because I was going . . . I ain't gonna lie because we was trying to get [government employee] to do something and he agreed to do it and he just never responded . . . and he just disappeared and stopped answering, even to this day."  The CW has explained that the defendant's statement about "last time we was trying to something like this" was a reference to the $20,000 bribe that the CW paid to the defendant in 2019 in return for him using his official position to pressure the government employee to resolve the dispute over the termination of the CW's company's HCA contract.

## B.      The 2019-bribe is inextricably intertwined with the charged offense.

"Rule 404(b) excludes only evidence 'extrinsic'" or "'extraneous'" to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'"  *United States v. Allen*, 960 F.2d

1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] intent to distribute and his knowledge about [a co-conspirator's] drug cache."); *see also United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) ("[Rule 404(b) does not bar 'evidence . . . of an act that is part of the charged offense,'"); *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) ("No [404(b)] notice is required, however, for evidence of an 'intrinsic act,' that is, an act that is 'part of the crime charged.'"); *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (evidence that defendant charged with fraud had threatened a co-conspirator not "other crime evidence" but instead "inextricably intertwined" with charged offense); *United States v. Garces*, 133 F.3d 70, 77 (D.C. Cir. 1998) (holding that evidence that "was part of the story" was not other crimes evidence); *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994) ("Moreover, 'Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'  The testimony revealing that Early used his cousin's Kaiser Permanente health insurance card to obtain medical treatment was intrinsic to the charged offense because it helped establish his identity as the driver of the Mazda . . ."); Fed. R. Evid. 404(b), Advisory Comm. Note  regarding 1991 Amendment ("The amendment does not extend to evidence of acts which are 'intrinsic' to the charged offense [citation omitted]."); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("[U]ncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate

the commission of the charged crime," thus taking such acts outside the scope of Rule 404(b).)[2]

This well-established principle applies here, as the 2019-bribe is inextricably intertwined with the charged offense. It establishes the defendant's preexisting corrupt relationship with the CW. *See, e.g.*, *United States v. Bates*, 600 F. 2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior). This evidence is intrinsic, as it "arose out of the same transaction or series of transactions as the charged offense," *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996); and it is "necessary to complete the story of the crime of trial." *Id.* The intrinsic nature of the 2019-bribe is further demonstrated by the fact that the defendant discussed it with the CW during the charged bribery scheme.

## C.     The 2019-bribe is also admissible pursuant to Fed. R. Evid. 404(b).

In any event the 2019-bribe is admissible other crimes evidence. The Federal Rules of Evidence prohibit "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The D.C. Circuit has routinely recognized that Rule 404(b) is a rule of *inclusion* rather than exclusion. *See United States v. Machado-Erazo*, 47 F.4th 721, 728 (D.C. Cir.

---

[2]     It should be noted that *Bowie,* 232 F.3d 923, seems to have questioned the admission of intrinsic other crimes evidence without a 404(b) analysis, but one panel of the Circuit cannot overrule standing precedent. *See, e.g., United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("panels of this court [] are obligated to follow controlling circuit precedent until either [the Court of Appeals] sitting *en banc*, or the Supreme Court, overrule it."); *see also United States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir. 2003) ("Although we have recently expressed our dissatisfaction with the extrinsic-intrinsic distinction, [citation omitted], we have nonetheless recognized that "at least in a narrow range of circumstances ... evidence can be 'intrinsic to' the charged crime"). In any event, the *Bowie* court recognized that its position does not affect the admissibility of the evidence: the "only consequences of labeling evidence 'intrinsic" are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon the defense counsel's request." *Id.* at 927. Both of which have been, or will be, done here.

2018) (holding that "[i]ndeed, Rule 404(b) is a rule of inclusion rather than exclusion prohibiting

the admission of other crimes evidence in but one circumstance – for purpose of proving that a

person's actions conformed to his character") (quoting *United States v. Bowie*, 232 F.3d 923, 929

(D.C. Cir. 2000)).

> The D.C. Circuit has explained:
>
> Although stated as a restriction, the Rule is actually one of "inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).  Evidence is only prohibited if it is offered for the impermissible inference that a defendant is of bad character resulting in bad conduct.  *See, e.g., United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990).  Thus evidence of a defendant's prior bad acts is admissible for purposes *unrelated* to the defendant's character or propensity to commit crime, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b); *see also Miller*, 895 F.2d at 1436 ("[U]nder Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.").

*United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (emphasis in original).  The Rule's

list of permissible uses of bad-act evidence is illustrative – not exhaustive.  2 J. Weinstein and M.

Berger, WEINSTEIN'S FEDERAL EVIDENCE § 404.22[6][a] (2017); *see, e.g., Machado-Erazo*, 47

F.4[th] at 728 (Rule 404(b) "permits such evidence for other purposes, including proof of motive,

intent, knowledge, identity and absence of mistake."); *United States v. Bowie*, 232 F.3d 923, 933

(D.C. Cir. 2000) (approving admission of other crimes evidence to corroborate other evidence).

Analysis of the admissibility of bad-acts evidence involves two steps.  First, the Court

determines "whether the evidence is probative of some issue other than character."  *Cassell*, 292

F.3d at 792.  Evidence of other crimes is admissible if it "is relevant, relates to something other

than character or propensity, and supports a jury finding that the defendant committed the other

crime or act."  *Id.* (citing *United States v. Bowie*, 232 F.3d 923, 926-27 (D.C. Cir. 2000)).  "Only

one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits

a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *United States v. Moore*, 732 F.2d 983, 987 n.30 (D.C. Cir. 1984).

Second, if the Rule 404(b) criterion is met, the evidence should be admitted unless it is prohibited by other "general strictures limiting admissibility, such as Rule 403." *Cassell*, 292 F.3d at 792 (internal quotation marks and citations omitted). Here, the other crimes evidence is relevant to issues other than character, and its probative value is not substantially outweighed by unfair prejudice. *See* § III.C.2., *infra*. It should, therefore, be admitted.

## 1. The proffered evidence is probative of issues other than the defendant's character.

Other crimes evidence is presumptively admissible if the following three criteria are met: (1) the evidence of other crimes or acts is relevant in that it has "*any tendency* to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401; (2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and (3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or act [citations omitted]."[3] *Bowie,* 232 F.3d at 930 (emphasis added). Here, the other crimes evidence should be admitted because it tends to make a fact of consequence more probable and it relates to matters other than defendant's character. Specifically, the 2019-bribe tends to establish, among other things, the following: (1) the defendant's prior corrupt relationship with the CW, (2) the defendant's opportunity or capacity to corruptly use his official position on behalf of the CW, and (3) the defendant's motive and intent

---

[3]    Relevant other crimes evidence should be admitted if the Court determines that the jury could reasonably find by a preponderance of the evidence that the other crimes or acts occurred. *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

for, and lack of mistake in committing the charged offense.  Evidence of the 2019-bribe also tends

to rebut the defendant's denial of having committed the charged offense.

Other crimes evidence is often relevant to several issues.  In its *en banc* decision in

*Crowder*, the Court of Appeals stated the following:

> Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation and the like.  Proof of an individual's intent to commit an act may itself serve as proof that the individual committed the act, as the Supreme Court recognized more than a century ago.  In proving that a defendant intended to distribute crack cocaine, for instance, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits.  Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact – motive –  from which it could in turn infer the element of possession.  Thus, other-offense evidence of intent would have probative value not just on the intent element, but also on the possession element of the offense.

*United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (*en banc*) (citation omitted).

Thus, in *Crowder*, other crimes evidence was admitted to show the defendant's knowledge, intent,

and motive.  Here, the proffered other crimes evidence is relevant to establishing motive, intent,

associations, opportunity, and lack of mistake.  And as in Crowder, some of the proffered other

crimes evidence will be relevant to one or more of these topics.

a.      **The proffered evidence tends to establish the defendant's prior corrupt relationship with the CW.**

The defendant's prior involvement in a bribery scheme with the CW is relevant to show

the nature of their relationship and its origin.  *See, e.g.*, *United States v. Gaviria*, 116 F.3d 1498,

1532-33 (D.C. Cir. 1997) (other crimes evidence properly admitted where "'it shows or tends to

show the existence of a relationship between the defendants, and whether it shows or tends to show

the defendants had a common scheme or plan which included the offenses for which they are now

charged.'"); *United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996) (evidence of the

criminal activity preceding the charged conspiracy helped explain the subsequent formation of the

larger conspiracy).  As a leading commentator has explained:

> Numerous cases allow the prosecutor to do precisely that [offer evidence of the defendant's prior illegal dealing to establish the relevant corrupt relationship] (footnote citing cases omitted).  In principle, this is a legitimate use of uncharged misconduct evidence.  The prosecutor is not merely offering evidence of the defendant's prior misconduct with third parties and arguing that since the defendant once entered into an illegal transaction, he or she probably entered into the charged illegal agreement.  Rather, the prosecutor is offering evidence of the defendant's special relationship with the same coconspirator involved in the charged conspiracy and contending that the earlier, special relationship increases the likelihood that they entered into the later, charged conspiracy.  This theory of logical relevance is tenable.  *It is unlikely that a criminal would approach a complete stranger with a proposal for an unlawful conspiracy.  It is much more plausible that the defendant will approach someone the defendant trusts (footnote omitted) and someone whom defendant knows is willing to engage in illegal activity* (footnote omitted).  This is a permissible noncharacter theory of logical relevance.

Edward J. Imwinkelried, UNCHARGED MISCONDUCT EVIDENCE § 4.22 and n.2 (1984 ed. and 1988

supp.) (emphasis added).

 Specifically, evidence of the defendant's prior bribery scheme with the CW will elucidate

the formation, evolution, and organization of the charged bribery scheme.  It is permissible "to

inform . . . the jury how the illegal relationship between the participants in the crime developed . .

. ."  *United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000); *see also United States v. Straker*,

800 F.3d 570, 590 (D.C. Cir. 2015) (evidence of defendants' involvement in uncharged prior crime

was relevant for non-propensity purposes to show how those defendants started to work together,

to show their motive and intent, and to establish their state of mind); *United States v. Wantuch*,

525 F.3d 505, 517–518 (7th Cir. 2008) (prior criminal joint venture was admissible to show how

defendant's relationship with cooperating witness began, its basis and structure, and how

relationship blossomed into charged offense); *United States v. Flemmi*, 402 F.3d 79, 87–93 (1st

Cir. 2005) (other crimes evidence was relevant, and thus admissible, to show context and

participants' relationship in criminal conspiracy); *United States v. Smith*, 282 F.3d 758, 768–769 (9th Cir. 2002) (defendant's prior criminal endeavors with his coconspirator helped provide "background and development" of charged conspiracy).

At bottom, absent such evidence of the defendant's prior illicit relationships with the CW the jury might well wonder why the defendant trusted the CW and agreed to enter the bribery scheme with him. *See, e.g., United States v. Vizcarrondo-Casanova*, 763 F.3d 89, 94 (1st Cir. 2014) (evidence of co-defendant's prior crimes was admissible in trial for conspiracy to commit carjacking to help jury understand existence and origins of trust among the conspirators); *United States v. Torres-Chavez*, 744 F.3d 988, 991 (7th Cir. 2014) (evidence of prior uncharged cocaine transactions between defendant and co-conspirator were properly admitted under Rule 404(b)(2) to establish their "trusting" relationship); *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (defendant's prior illegal firearms sales were admissible, in drug conspiracy prosecution, to show development of trust and relationship between defendant and co-conspirator); *United States v. Smith*, 282 F.3d 758, 768–769 (9th Cir. 2002) (defendant's prior criminal endeavors with his coconspirator helped provide "background and development" of conspiracy and would help explain why coconspirator trusted defendant enough to include him in risky drug importation scheme).

b. **The 2019-bribe tends to establish the defendant's opportunity and capacity to commit the charged offense.**

Rule 404(b) specifically provides for the admission of evidence of other crimes to establish the defendant's opportunity to commit the charged offense. Opportunity or capacity means the defendant's physical or mental ability to perform the act in question. 22B Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. EVID. § 5241 (1st ed.); *see also United States v. Arroyo*, 600 Fed. Appx. 11, 13 (2d Cir. 2015) (that defendant had a gun seven months after drug sale admissible

to prove he could have had a gun during the sale); *United States v. Field*, 875 F.2d 130, 135 (7th Cir. 1989) (in prosecution for altering postal money orders, defendant's possession in his prison cell of tools and materials that witness testified were used to alter money orders was relevant to show capacity to commit the crime). Here, evidence of the 2019-bribe tends to establish that the defendant had the access and connections necessary to commit the charged offense.

**c.     The 2019-bribe tends to establish the defendant's motive, intent, and lack of mistake in  committing charged offense.**

Other crimes evidence may properly be admitted to prove a defendant's motive, intent, and lack of accident or mistake.  *See, e.g., Cassell*, 292 F.3d at 792 (evidence of a prior bad act is admissible to prove motive and intent).  The 2019-bribe shoes that the defendant had previously agreed, in exchange for a bribe payment, to use his official position to resolve a government contract dispute in favor of the CW.  This tends to establish that the defendant's agreement with the CW underlying the charged conduct also involved the defendant using his official position to assist the CW with government contracting issues – and that the defendant was not mistaken about his arrangement with the CW.

**d.     The 2019-bribe tends to rebut defendant's denial of having committed the charged offense.**

The 2019-bribe tends to rebut the defendant's denial of the charges.  *See Mathews v. United States*, 485 U.S. 58, 64-65 (1988) ("A simple plea of not guilty, Fed.Rule Crim.Proc. 11, puts the prosecution to its proof as to all elements of the crime charged . . .").  Specifically, evidence of the 2019-bribe is admissible to rebut the anticipated claim that the defendant lacked the requisite intent to commit the charged offense.  Questions of the defendant's intent will likely be important at trial.[4]  In the Rule 404(b) calculus, facts of consequence include facts that are relevant to

---

[4]     *See, e.g.*, ECF # 40, at 5 ("But while that was the mindset of the confidential informant, White's mindset was otherwise. It is clear from the dialogue between White and the confidential informant as set forth in the indictment

reasonably anticipated defenses. *See United States v. Douglas*, 482 F.3d 591, 597-600 (D.C. Cir. 2007) (other crime evidence admissible to prove intent even though the defendant had not disputed intent, because the government bore the burden of proving intent beyond a reasonable doubt); *see also United States v. Roberson*, 581 F.Supp.3d 65, 75 (D.D.C. 2022) ( "'Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense.'" (citing *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007)).

## 2.    The probative value of the 2019-bribe is not substantially outweighed by the danger of unfair prejudice.

Fed. R. Evid. 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403 (emphasis added). The rule "tilts, as do the rules [of evidence] as a whole, toward the admission of evidence in close cases." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984).

Evidence of the 2019-bribe should not be excluded pursuant to Rule 403. The Rule's definition of unfairly prejudicial evidence does not include incriminating evidence that simply prejudices a defendant's chances of acquittal. Instead, the Supreme Court has described "unfair" prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The D.C. Circuit has explained that Rule 403's prohibition of unfairly prejudicial evidence in this way:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair

---

that White never committed to doing anything on behalf of the confidential informant, and aside from attending single meeting he did nothing.")

prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value.   [citations omitted, alterations in original].

*Gartman*, 146 F.3d at 1021 (affirming admission, pursuant to Rule 404(b), of evidence that the defendant, charged with fraud, had placed gun in co-conspirator's vagina and threatened her); *see also United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("Rule 403 'does not bar powerful, or even "prejudicial" evidence.   Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value.'").   "[I]n determining whether the probative value is *substantially* outweighed by the danger of unfair prejudice it is a sound rule that the balance should be struck in favor of admission when the evidence indicates a close relationship to the event charged."   *United States v. Clarke*, 24 F.3d 257, 265-66 (D.C. Cir. 1994) (quotations and citations omitted) (emphasis in original).

Evidence of the 2019-bribe presents no danger of unfair prejudice.   First, it has a close relationship to the charged crime.   Second, it is similar in nature to the charged offense; it does not inject something new and prejudicial into the case, such as violence or perversion, which might inflame the jury.   Even if the Court were to conclude that evidence of the 2019-bribe presented some "unfair prejudice," it still would not "substantially outweigh" the evidence's great probative value.   The balancing between probative and unfairly prejudicial should lean toward inclusion. *See, e.g., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir.

1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.").

IV.    **Conclusion**

The indictment is not duplicitous. Rather, the indictment properly charges the defendant with having committed a single bribery scheme. Next, evidence of the 2019-bribe should not be excluded as it is inextricably intertwined with the charged offense; it is also admissible pursuant to Rule 404(b). The defendant's motion should, therefore, be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*John Crabb Jr.*
John Crabb Jr.
N.Y. Bar No. 2367670
Rebecca G. Ross
N.Y. Bar No. 5590666
601 D Street, N.W.
Washington, D.C. 20530
john.d.crabb@usdoj.gov
(202) 252-1794