**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 24-406 (RC) |
| | : | |
| TRAYON WHITE, SR., | : | Re Document No.: 89 |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## GRANTING DEFENDANT'S MOTION *IN LIMINE*

## I. INTRODUCTION

Defendant Trayon White, Sr. moves *in limine* to exclude certain provisions of the D.C. Council Code of Official Conduct.[1] He argues that allowing the Government to present evidence of these provisions to the jury risks having them convict him on a circular theory that he took bribes by accepting money in return for accepting money. The Court agrees and will exclude this evidence.

## II. FACTUAL BACKGROUND

This Court has described the factual background for this case in previous opinions and assumes the parties' familiarity with the basic facts. *See United States v. White*, No. CR 24-406 (RC), 2026 WL 1361545, at *1–2 (D.D.C. May 15, 2026). Mr. White is a D.C. Councilmember whom the United States accuses of having accepted bribes from Confidential Human Source 1 ("CHS-1") in violation of 18 U.S.C. § 201(b)(2). *Id.* at *1.

[1] All references to the D.C. Council Code of Official Conduct or the ethics code refer to the Council of the District of Columbia Code of Official Conduct for Council Period 25, which is attached as Exhibit 1 to Gov't's Opp'n to Def.'s Mot. in Limine Regarding D.C. Council Code of Conduct, ECF No. 96-1.

## III. ANALYSIS

One of the Government's legal theories is that Mr. White violated Section 201(b)(2) because he accepted bribes in exchange for committing acts that violated the D.C. Council Code of Official Conduct and therefore were "in violation of [his] official duty." 18 U.S.C. § 201(b)(2)(C). Mr. White moves to exclude certain ethics provisions in the D.C. Council Code of Official Conduct from the jury's consideration because, he argues, they are circular as applied to the bribery statute. *See* Def.'s Mot. *in Limine* to Preclude the Gov't's Testimonial & Other Evid. About Certain Provisions of D.C. Council Code of Conduct ("Def.'s Ethics Mot.") at 1, ECF No. 89.

The parties begin on common ground. Both agree that the D.C. Council Code of Official Conduct sets forth official duties for Mr. White. *See* Def.'s Ethics Mot. at 1; Gov't's Opp'n to Def.'s Mot. in Limine Regarding D.C. Council Code of Conduct ("Gov.'s Opp'n to Ethics Mot.") at 1. The parties also agree that to the extent Mr. White accepted payment for taking acts that violated at least some of the ethics provisions in that code he may be liable under Section 201(b)(2)(C). *See* Def.'s Ethics Mot. at 1 ("Some of these ethics codes provisions are cognizable predicates for the offense of official duty bribery under 18 U.S.C. § 201(b)(1)(C) . . . .").[2] Mr. White expressly disavows a challenge to many of the code's provisions. *See id.* at 3–4.

Where the parties part ways is on the question of whether three specific ethics rules in the code of conduct satisfy the *quid pro quo* requirement for bribery under Section 201—giving (or receiving) something in exchange for something else. The Supreme Court has explained that "for bribery there must be a *quid pro quo*." *United States v. Sun-Diamond Growers of Cal.*, 526

[2] The Court assumes Mr. White meant (b)(2)(C) rather than the similar (b)(1)(C) because that is the relevant provision here.

U.S. 398, 404 (1999); *see also United States v. Paitsel*, 147 F.4th 1010, 1032 (D.C. Cir. 2025) (Randolph, J., dissenting) ("The majority's opinion recognizes the Supreme Court's decisions holding that the crime of bribery under § 201 requires proof of a *quid pro quo*."). This requirement derives from the statute's text. As relevant here, Section 201(b)(2) prohibits accepting a bribe "in return for" violating an official duty, meaning that the money must have been given or accepted "*in exchange* for" another act. 18 U.S.C. § 201(b)(2); *Sun-Diamond*, 526 U.S. at 404. Take an example from this case: The Government alleges that Mr. White accepted money from CHS-1 in exchange for agreeing to pressure other government officials to give CHS-1 government contracts. *See United States v. White*, No. CR 24-406 (RC), 2026 WL 1361545, at *8 (D.D.C. May 15, 2026). Mr. White gets the money (the *quid*) and CHS-1 gets an increased chance at lucrative government contracts (the *quo*).

As Mr. White sees it, however, *some* of the D.C. ethics rules are designed in a way that Mr. White might violate them by the very act of accepting money even if he agreed to do nothing in return. Most obviously, Mr. White points to an ethics provision prohibiting councilmembers from "solicit[ing] or accept[ing], either directly or indirectly, any gift from a prohibited source." Gov. Opp'n to Ethics Mot., Ex. A ("Code of Official Conduct") § III(a), ECF No. 96-1. He worries that, assuming CHS-1 counts as a "prohibited source," the jury might convict him simply because it finds he accepted money from CHS-1, even if he offered nothing in return, because the mere acceptance of the money was an act violating the ethics rules. Similarly, Mr. White fears that the jury might convict him because it finds the act of accepting the money counts as "knowingly us[ing] the prestige of [his] office or public position for [his] private gain" even if Mr. White agreed to do nothing in return. *Id.* § VI(b)(1).

The Court agrees with Mr. White that these examples fail the *quid pro quo* standard. Mr. White does not violate a duty in return for—or as the Supreme Court has put it, "*in exchange* for"—a bribe if the only act violating the official duty is the acceptance of the bribe itself. *Sun-Diamond*, 526 U.S. at 404. That would be *quid* but no *quo*.

Somewhat more difficult is whether it would fail the *quid pro quo* requirement for the jury to convict Mr. White because it found that by accepting the payments he violated the ethical provision prohibiting him from "receiv[ing] any compensation, salary, or contribution to salary, gratuity, or any other thing of value from any source other than the District government for [his] performance of official duties." Code of Official Conduct § I(e)(1). The key, once again, is the phrase "in return for." To convict Mr. White under this theory, the jury would be finding that Mr. White accepted payment "in return for" accepting payment for performing his official duties. That redundancy—accepting payment in return for accepting payment—makes little sense.

The reason why the theory is redundant is because the ethics provision is getting at something beyond bribery: gratuity. The ethics provision appears to prohibit public officials from accepting payment even as a *post hoc* reward for performing a public duty. That is a federal crime as well, but it is not bribery. It is the lesser crime of accepting a gratuity, which is punishable by far fewer years in prison. *See* 18 U.S.C. § 201(c); *Snyder v. United States*, 603 U.S. 1, 13 (2024) ("Congress has separated bribery and gratuities into two distinct provisions of § 201 for good reason: The crimes receive different punishments that 'reflect their relative seriousness.'" (quoting *Sun-Diamond*, 526 U.S. at 405)); *Paitsel*, 147 F.4th at 1016 (similar). As the Supreme Court has made abundantly clear, the dividing line between gratuities and bribes is that bribery requires an intent to be influenced, meaning that the payment was accepted in exchange for something else. *Sun-Diamond*, 526 U.S. at 404–05. Convicting Mr. White under

this ethics provision, which encompasses mere gratuities, risks transforming a gratuity into a bribery conviction.

The Government counters that the D.C. Circuit's decision in *Paitsel* disposes of Mr. White's circularity concern, Gov.'s Opp'n to Ethics Mot. at 3–6, but the Court is unconvinced. *Paitsel* involved an FBI agent who was convicted of bribery under 18 U.S.C. § 201(b)(2)(C) because he accepted money in exchange for giving his co-defendant, a real estate investor, access to a database that could only be lawfully used for law enforcement investigative purposes. 147 F.4th at 1012–13. The co-defendant used the information from the database to identify and contact tenants to buy those tenants' unique rights to purchase rental properties before others and then sell those rights to third parties for a profit. *Id.* at 1014. The primary issue on appeal was whether the FBI agent's use of the database for an improper purpose violated an "official duty" as required for a conviction under Section 201(b)(2)(C). *Id.* at 1013. The D.C. Circuit held that it did. *Id.* The court defined official duty as encompassing "an obligation relating to, and required by, [the official's] position," and there was sufficient evidence for "a jury to find that Paitsel [the FBI agent] had an official duty to comply with the [database's] permissible uses." *Id.* at 1026.

The Government belabors that under *Paitsel* the D.C. Council Code of Official Conduct qualifies as an official duty, but no one disputes that in this case.[3] The question is whether that violation of an official duty regarding the three ethics provisions discussed above can be logically separated from the act of accepting payment. *Paitsel* did not hold that violations of any official duty always satisfy the bribery requirement. On the contrary, the court in *Paitsel*

[3] For what it is worth, D.C. Circuit reached its decision by "assum[ing] without deciding that the Government may not satisfy its burden with ethics regulations applicable to all federal government employees," an argument pressed by Paitsel. 147 F.4th at 1026.

separately analyzed whether the government's evidence satisfied the *quid pro quo* requirement, concluding that it did because Paitsel violated his official duty by accessing the database, which was a distinct act made in return for the payment. *See id.* at 1016–17. The court explained that "bribery generally requires that payments are made or agreed to *before* an official act in order to influence the official with respect to that *future official act*," meaning a future act distinct from the acceptance of the bribe. *Id.* at 1016 (cleaned up) (second emphasis added). The court's *quid pro quo* analysis would have been unnecessary if violating the official duty while taking money inherently violated Section 201.

The Court's conclusion that bribery requires a *quid pro quo* and that these provisions do not meet that requirement does not resolve all of Mr. White's motion. One of the ethics code provisions states that a councilmember cannot "knowingly use the prestige of [his] office or public position for [his] private gain *or that of another*." Code of Conduct § VI(b)(1) (emphasis added). As explained above, to the extent all that is at issue is Mr. White's acceptance of money for his own private gain, that is not *quid pro quo* because the private gain would be the acceptance of the money. But if he accepted money in exchange for using the prestige of his office for the private gain of *another*, such as CHS-1, that would qualify as *quid pro quo*.

Still, Mr. White insists that the Government cannot invoke this part of the code of conduct because it is too vague, and the Court agrees. *See* Def.'s Ethics Mot. at 6–7. The Court is persuaded that Mr. White's concern here is sufficiently similar to the concern motivating the Supreme Court's decision in *McDonnell v. United States*, 579 U.S. 550 (2016). There, the Supreme Court expressed concern over the same bribery statute, albeit applying a different means. The United States had argued that for purposes of *quid pro quo* bribery, "nearly anything a public official accepts—from a campaign contribution to lunch—counts as a *quid*; and nearly

anything a public official does—from arranging a meeting to inviting a guest to an event—counts as a *quo*." *Id.* at 575. The Supreme Court held, however, that the statute could not sweep so broadly. *See id.* 581. It explained that such an expansive bribery law would encroach on the proper activities of elected officials. *See id.* at 575.

> [C]onscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time. The basic compact underlying representative government *assumes* that public officials will hear from their constituents and act appropriately on their concerns—whether it is the union official worried about a plant closing or the homeowners who wonder why it took five days to restore power to their neighborhood after a storm.

*Id.* As "White House counsel who worked in every administration from that of President Reagan to President Obama warne[ed]," such an expansive interpretation "would likely chill federal officials' interactions with the people they serve and thus damage their ability effectively to perform their duties." *Id.* (quotation omitted).

The Court also zeroed in on the precise concern that Mr. White highlights here. "[U]nder the Government's interpretation, the term 'official act'"—which in that case was what would count as the *quo* in *quid pro quo*—was "not defined 'with sufficient definiteness that ordinary people can understand what conduct is prohibited,' or 'in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Id.* at 576 (quoting *Skilling v. United States*, 561 U.S. 358, 402–03 (2010)). It would allow public officials to "be subject to prosecution, without fair notice, for the most prosaic interactions." *Id.*

The same concerns apply to the D.C. Council Code of Official Conduct provision prohibiting the use of the "prestige" of Mr. White's "office or public position for" the "private gain . . . of another." Code of Conduct § VI(b)(1). Countless innocuous activities could qualify as knowingly using the prestige of one's office in a way that results in private gain for another. As just one example, the Government could argue that just by associating with CHS-1 while

being a public official, Mr. White knowingly used the prestige of his office to show favor for CHS-1 thereby resulting in others wanting to do business with CHS-1 to CHS-1's financial gain. The Court agrees with Mr. White that he cannot reasonably have had notice of all the things that could fall under this sweeping provision for purposes of the bribery statute and that the threat of bribery prosecutions for such "prosaic interactions" would unduly chill democratically elected representatives from fulfilling their duties of constituent services. *McDonnell*, 579 U.S. at 576.

To be clear, the Court has no occasion to question, and does not question, these three provisions of the D.C. Council Code of Official Conduct for their use as ethics rules, which may carry their own consequences. But attaching a federal bribery charge to them, punishable by fifteen years in prison, is a bridge too far. Perhaps there is a narrower construction of these provisions that would avoid the circularity and vagueness concerns identified above. But neither party has suggested any. Accordingly, the Court will exclude Sections I(e)(1), III, and VI(b)(1) and prevent the Government from relying on these provisions for purposes of proving bribery under 18 U.S.C. § 201(b)(2)(C).

## IV. CONCLUSION

For the foregoing reasons, the court grants Mr. White's motion *in limine* to exclude certain portions of the D.C. Council Code of Conduct.

Dated: September 5, 2026

RUDOLPH CONTRERAS
United States District Judge