**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Crim. No.: 24-CR-406 (RC)** |
| **TRAYON WHITE, SR.** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUBMISSION REGARDING DRAFT JURY INSTRUCTIONS**

The United States of America, hereby, requests the following revisions and supplements to the draft jury instructions.

## I. Instruction 2.405 Unanimity—General

In this case, the Government has alleged that Mr. White committed a scheme to commit bribery. You must agree unanimously on the overall scheme. Additionally, the Government has alleged that Mr. White accepted payments as part of this scheme on four occasions. You must unanimously agree that Mr. White accepted payment on one of those four occasions. However, you only need to agree on a single occasion, even if you disagree or find he did not accept a payment on any of the other occasions.

* * *

This revised instruction is consistent with the Court's rulings. The Court previously ruled as follows: "To avoid any concern of a nonunanimous verdict, therefore, this Court, like the trial court in *Bruce*, will instruct the jury that it must unanimously agree on at least one of the payments that the Government alleges Mr. White accepted in order to return a guilty verdict." September 4,

2026 Mem. Op. at 20.

> Here, the Court reads the Indictment to allege that the four payments CHS-1 made to Mr. White between June and August 2024 were part of a single, continuing scheme. . . . . And though the Indictment documents four separate bribe payments, nowhere does it allege that each payment was made for a discrete, separate promise. Instead, as the Government explains, the Indictment is fairly read as alleging the Mr. White agreed to perform his half of the bargain "as opportunities arise." Under this theory, "the government does not have to prove an explicit promise to perform a particular act made at the time of payment" but can instead prove that "the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence—i.e., on behalf of the payor—as specific opportunities arise."

Mem Op. [ECF # 65], at 6-7; *see also* Course of Conduct – Defined, Draft Jury Instructions, at 46.

## II. Limiting Instruction Regarding Intrinsic Evidence

You have heard evidence about bribery schemes involving contracting in the areas of mental health services, public housing, and schools. First, the defendant is not charged with any of those schemes.

It is up to you to decide whether to accept that evidence.

First, if you find by a preponderance of the evidence (meaning it was more likely than not) that Mr. White and Mr. Kamara discussed bribery schemes involving contracting in the areas of mental health services, public housing, and schools, you may use this evidence only for the following purposes: (1) establishing Mr. White's relationship with Mr. Kamara; (2) determining Mr. White's intent; (3) determining Mr. White's motive; (4) determining Mr. White's opportunity; (5) determining Mr. White's knowledge; (6) determining the purpose of Mr. Kamara's payments to Mr. White; and (7) determining Mr. White's absence of mistake.

You may not use this evidence for any other purpose. Mr. White is only on trial for the crime charged. He is not charged in this case with any offenses relating bribery schemes involving contracting in the areas of mental health services, public housing, and schools, and you may not

use this evidence to conclude that Mr. White has a bad character, or that Mr. White has a criminal personality. The law does not allow you to convict him simply because you believe he may have done bad things not specifically charged as crimes in this case.

**III. Fraud on the United States**

The Government also alleges that the Defendant violated the bribery statute by committing fraud on the United States. The term "fraud on the United States" means to engage in a scheme or systematic course of conduct intended to deceive or cheat the United States government or any of its agencies out of money or property. It also means to obstruct or interfere with one of the United States government's lawful functions, by deceit, craft, trickery, or dishonest means. The term "United States government" includes the government of the District of Columbia, including its agencies, such as ONSE, or DYRS.

* * *

This instruction is consistent with the instruction given by Judge Mehta in *United States v. Meseretu*, Crim. No. 24-CR-281 (APM) (D.D.C. June 25, 2025). *See* ECF # 136, at 19 (Attached); *see also United States v. Leyva*, 282 F.3d 623, 625 (9th Cir. 2002) ("the plain language of § 201(b)(2)(B) requires only that the public official accept a thing of value in exchange for perpetrating a fraud. The absence of any official act requirement is particularly pointed in light of explicit 'official act' or 'official duty' language in other subsections of § 201."); *Parks v. United States*, 355 F.2d 167, 169 (5th Cir. 1965) ("The jury could find that, as charged in the indictment [violation of § 201 fraud on the United States], 'said fraud (was) to deprive the United States of its right to have the faithful and honest services, decisions and actions of * * * Sergeant Shand free from corruption and improper influence by a business and person in selling life insurance.'").

## IV. Official Act – Campaign Contributions

The government objects to the inclusion of the following language:

As noted above, although the agreement generally need not be explicit, it must be explicit if it involves a campaign contribution. An explicit agreement means one that is plainly evident. It is not enough to find an agreement with respect to a campaign contribution simply because a campaign donation preceded or followed the favorable act. But the agreement does not need to be expressly stated. It can be inferred from the words and actions of the parties; and it can be informal. In other words, you do not need to find that the parties expressly stated the terms of the agreement.

* * *

The Indictment does not allege that the "thing of value" was a "campaign contribution." In contrast, campaign contributions were alleged as the thing of value in *United States v. Benjamin*, 95 F.4th 60, 63 (2d Cir. 2024) (emphasis added)(defendant "allegedly agreed to allocate $50,000 in state funds to a non-profit organization that was controlled by Gerald Migdol, a real estate developer in [defendant's] district, *in exchange for campaign contributions* that Migdol provided"). When the alleged thing of value is a campaign contribution, the First Amendment is implicated. *Id.* at 73 ("We recognize that campaign contributions implicate the First Amendment, which 'requires us to err on the side of protecting political speech rather than suppressing it.'"). This requires an "explicit quid pro quo." *Id.* at 74. Since the alleged thing of value in this case is

not a campaign contribution, none of the *Benjamin* prophylactics are necessary.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

John Crabb Jr.

John Crabb Jr.
N.Y. Bar No. 2367670
Rebecca G. Ross
N.Y. Bar No. 5590666
601 D Street, N.W.
Washington, D.C. 20530
john.d.crabb@usdoj.gov
(202) 252-1794