**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Crim. No.: 24-CR-406 (RC)** |
| **TRAYON WHITE, SR.** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTIONS FOR JUDGMENT OF ACQUITAL OR DISMISSAL**

The United States of America, hereby, opposes the Defendant's motions for judgment of acquittal or dismissal. Def. Mot. [ECF # 143].

## I. The Defendant's Motions Should Be Denied.

Notwithstanding the Defendant's overblown rhetoric, the motions before the Court are straightforward. First, the Defendant was charged in a single count indictment with the following bribery scheme:

> From June 26, 2024, to August 18, 2024, . . . [Defendant] corruptly[1] demanded, sought, received, accepted, and agreed to receive and accept approximately $156,000, and received and accepted $35,000 in the form of four cash payments in exchange for using his position as a D.C. Councilmember to assist Company 1 and Company 2 extend their contracts at the ONSE and DYRS for VI services.

Indictment ¶ 69 [ECF # 12]. As set forth in detail below, there was more than sufficient evidence presented upon which a reasonable juror could conclude that the Defendant is guilty of this charge. The Defendant's motion for judgment of acquittal, therefore, fails. Conversely, there is no

[1] The Defendant act corruptly by accepting and agreeing to accept money in return for being influenced or induced by each of the means set forth in 18 U.S.C. § 201(b)(2)(A)(B)(C).

evidence that the government intended to cause the Defendant to seek a mistrial. Accordingly, the Defendant's motion for dismissal on Double Jeopardy grounds also fails.

## II. Procedural Posture

On September 18, 2026, the government rested, and the Defendant made an oral motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a). 9/18/26 PM Trial Tr. at 5-20. The Court took the motion under advisement. *Id.* at 33; *see* Rule 29(b). The Defendant filed a written Rule 29 motion on September 20, 2026, [ECF # 120] and supplemented it on September 27, 2026. [ECF # 138].[2]

## III. The Defendant does not meet the exacting standard by which a motion for judgment of acquittal is evaluated.

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29 (a)(b) (the court may decide the motion after the jury is "discharged without having reached a verdict"). "The question is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements (*see* Sec. B, *infra*) of the crime beyond a reasonable doubt.'" *United States v. Khatallah*, 41 F.4th 608, 624 (D.C. Cir. 2022); *see e.g., United States v. Clark*, 156 F.4th 664, 679–80 (D.C. Cir. 2025) (same). "And the 'evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.'" *United States v. Payne*, 184 F.4th 655, 661 (D.C. Cir. 2026).

Accordingly, the Defendant faces an "'exceedingly heavy burden . . . .'" *Id.* The Supreme

[2] It appears that all Defendant's arguments contained in his first filing [ECF # 120] were subsumed in this latter filing.

Court recently explained that burden this way:

> While the sufficiency-of-the-evidence inquiry necessarily turns on facts, the reviewing court does not decide for itself whether the evidence establishes guilt beyond a reasonable doubt. Instead, it construes all evidence and makes all reasonable inferences in favor of the prosecution, and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Courts therefore conduct their review through a legal lens, applying a hypothetical, objective standard and *putting a thumb on the scale in favor of the prevailing party—the prosecution.*

*Bufkin v. Collins*, 604 U.S. 369, 385–86 (2025) (emphasis added) (citation omitted). The Defendant does not carry this heavy burden.

## A. The Charged Offense of Bribery

The Defendant is charged with one count of bribery in violation of 18 U.S.C. § 201(b)(2):

> From June 26, 2024, to August 18, 2024, in the District of Columbia, Defendant WHITE, being a public official, did directly and indirectly corruptly demand, seek, receive, accept, and agree to receive and accept anything of value, in return for being influenced in the performance of any official act; in return for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States; and in return for being induced to do and omit to do any act in violation of his official duties; that is, WHITE corruptly demanded, sought, received, accepted, and agreed to receive and accept approximately $156,000, and received and accepted $35,000 in the form of four cash payments in exchange for using his position as a D.C. Councilmember to assist Company 1 and Company 2 extend their contracts at the ONSE and DYRS for VI services.

Indictment ¶ 69 [ECF # 12]. The agreement need not be express: "the Government can prove the Defendant's intent by circumstantial evidence, based on his words, conduct, acts, and all the surrounding circumstances and the rational or logical inferences that may be drawn from them." ECF #142 at 47 (EXCHANGE NEED NOT BE EXPRESS). And the agreement need not be successful. ECF # 142 at 46 (PROOF OF SUCCESS NOT REQUIRED). Sufficient evidence that the Defendant agreed to this scheme was presented to the jury.

When evaluating the sufficiency of the evidence establishing that the Defendant agreed to

commit bribery, it is important to note that he was charged with a scheme to commit bribery. *See e.g.*, *United States v. Skelos*, 988 F.3d 645, 655 (2d Cir. 2021) ("[T]his theory means that the government does not have to prove an explicit promise to perform a particular act made at the time of payment so long as the general nature of the act to be taken was understood at the time of the payment."). The Court has previously held:

> [T]he Indictment is fairly read as alleging that Mr. White agreed to perform his half of the bargain "as opportunities arise." Under this theory, "the government does not have to prove an explicit promise to perform a particular act made at the time of payment" but can instead prove that "the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence—*i.e.*, on behalf of the payor—as specific opportunities arise."

Mem. Op. [ECF # 65] at 6-7 (citations omitted); *see also* ECF # 142 at 45 (COURSE OF CONDUCT – DEFINED).[3]

The evidence showed that the Defendant agreed to this bribery scheme. The scheme involved the Defendant corruptly assisting Kamara get certain D.C. government contracts extended in exchange for 3% of the value of the contracts – $156,000. And, during the course of the scheme, the Defendant actually received $35,000 pursuant to their ongoing scheme.

Here, the Defendant's recorded conversations with Kamara that were entered into evidence are more than sufficient evidence of this agreement. (This is "quintessentially a decision for the jury," as the Court has noted (9/18/26 PM Trial Tr. at 15:22-23.)) During the Defendant's second meeting with Kamara, they explicitly reached the agreement charged in the indictment:

[3] The extent the Defendant is challenging the Course of Conduct jury instruction [ECF # 142 at 45], his challenge is misplaced. Jury instructions may not be challenged in a Rule 29 motion. *See e.g., Musacchio v. United States*, 577 U.S. 237, 243 (2016) ("A reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed."); *Khatallah*, 41 F.4th at 624 ("Because the question is what 'any rational trier of fact' could have found, our determination 'does not rest on how the jury was instructed.'").

Kamara: Hey, just while you -- while you looking at that, let me show you something real quick.[4] I'm going to be honest with you though.

Defendant: Always.

Kamara: Um, so only you know this, because they, they've asked me about it but they ain't know. So Life Deeds has -- Life Deeds floating team.

Defendant: Okay.

Kamara: -- at 1-7 –

Defendant: Mm-hmm.

Kamara: Life Deeds got the 1 and 4 team at 1-3. They don't know that I own that other company called DSM –

Defendant: Okay.

Kamara: Called Ward's 5 Violence Prevention Network.

Defendant: Okay, that's not Cody (phonetic) and them is it?

Kamara: Uh-uh.

Defendant: Okay. What, what –

Kamara: No, that's, that's my company.

Defendant: What -- I know. What part of Ward 5?

Kamara: Uh, all of Ward 5.

Defendant: Okay.

Kamara: The whole Ward 5. So a lot of people don't know that all this together –

Defendant: Yeah.

Kamara: Yeah, and, and what I was thinking with you, *if you're able to seal*

---

4 This a reference to the ledger, which Kamara was showing to the Defendant at that time. GEX 20.

| | |
|---|---|
| | *this up –* |
| Defendant: | Yeah. |
| Kamara: | *I'll give you 141* -- |
| Defendant: | Okay. |
| Kamara: | Which is 3 percent. So 3 percent of the 51 -- I mean 3 percent of 1.7 is 51. |
| Defendant: | Okay. |
| Kamara: | Three point -- three, uh – 3 5 percent of 1.3 is 39. |
| Defendant: | Now, a question: are all these through the ONSE office? |
| Kamara: | This is through the ONSE. And then this is the -- |
| Defendant: | And what -- and this (inaudible) – I don't mean to cut you off. But tomorrow |
| Kamara: | Mm-hmm. |
| Defendant: | Look who I got to meet with tomorrow. |
| Kamara: | Kwelli [Sneed]. |
| Defendant: | Tomorrow. |
| Kamara: | The director [of ONSE]. |
| Defendant: | So I've been lining everything up. |

* * *

| | |
|---|---|
| Kamara: | So you're meeting with Kwelli, the director? |
| Defendant: | I'm meeting with the director tomorrow? |
| Kamara: | She, she's pretty cool, but she take her directors from Lindsey. |
| Defendant: | Yeah, and – |

Kamara: And Lindsey -- Lindsey be carrying them.

Defendant: She don't -- she don't know if she going to be –

Kamara: Director or not.

Defendant: Yeah, director or not. So that's what -- that's why I want to go talk to her and tell her I can be supportive if this, this, and this. Now –

Kamara: Mm-hmm.

Defendant: If this, this, and this, I don't -- *I'm going to tell her I don't know how much I can be supportive if this don't happen.* I'm just being real. Yeah. Damn, Kwelli.

Kamara: You just pretty much letting her know, like you told Lindsey the continuing with services with the same providers.

* * *

Defendant: Yeah, I'm going to put everything -- I get -- *once you get me -- if you lock eyes and get your understanding, I gets to work.*

Kamara: Understood. Understood.

Defendant: Yeah.

Kamara: Understood.

Defendant: Yeah, I *get to start making some shit happen*.

GEX 15 at 7:48-8:18, 8:32-9:02, 19:46-19:52, GEX 15A at 10:19-12:17, 13:4-14:1, 34:3-10 (July 17, 2024, meeting).

Over the course of one meeting – albeit interrupted when Kamara left to fetch more cash for the Defendant – Kamara set forth the charged bribery scheme and the Defendant agreed to it. Kamara explained those terms to the Defendant – the Defendant would get 3% of any contract that he helped to extend. And the Defendant agreed. For example:

Kamara: Yeah, and, and what I was thinking with you, if you're able to seal this up –

Defendant: Yeah.

Kamara: I'll give you 141 --

Defendant: Okay.

Perhaps, even more importantly, during this discussion, the Defendant immediately transitioned to the actions he would take to get the contracts extended. Specifically, the Defendant said he was going to meet the director of one of Kamara's contracting agencies and say: "I'm going to tell her I don't know how much I can be supportive if this don't happen."[5] The Defendant followed up by stating "I get to start making some shit happen." The Defendant's subsequent meetings and conversations with Kamara provide even more evidence that he agreed to the scheme.

Cleary the Defendant agreed to do more than simply check the status of Kamara's companies' contracts, *e.g*.: "I get to start making some shit happen." Specifically, as set forth below, the Defendant agreed to and intended to exert pressure on another official to perform an official act and to provide advice to another official, knowing or intending that such advice will form the basis for an official act by another official. Thus, the evidence establishes that the Defendant agreed to corruptly use his office to facilitate the extension of Kamara's companies' government contracts. The Defendant attempts to obfuscate this straightforward bribery scheme by cherry picking quotations, taking portions of conversations out of context, drawing self-serving inferences against the government, and attempting to make credibility determinations. None of these machinations meets the stringent Rule 29 standard.

---

5 During subsequent meetings the Defendant explicitly stated that he would make his vote for the director's confirmation contingent on her extending Kamara's companies' contracts. *See* GEX 16 at 4:06-4:20, GEX 16A at 9:14-21; s*ee also* GEX 17 at 5:25-6:12, GEX 17A at 10:1-25.

**B. Evidence Establishing the Elements of Bribery**

Bribery has three essential elements: (1) the defendant was a public official; (2) the defendant accepted or agreed to accept money; and (3) the defendant did so corruptly, *e.g.*, in return for (among other things) being influenced in the performance of any official action. *See* ECF # 142 at 35 (ELEMENTS OF THE CHARGE – BRIBERY). The Defendant neither needs to be successful nor "specify the means he will use to perform his end of the bargain." ECF # 142 at 46 (PROOF OF SUCCESS NOT REQUIRED).

There is more than sufficient evidence to establish each of these elements. First, there is ample evidence that the Defendant was a public official— a D.C. Council Member representing Ward 8. *See e.g.*, GEX 1 (Defendant's oath of office), 09/15/2025 AM Trial Tr. at 60:12-13 (testimony of Nicole Streeter). Second, the Defendant admitted that he "accepted or agreed to accept" a thing of value—he stipulated that he accepted cash from Allieu Kamara, the Government's confidential human source, on June 26, 2024, July 17, 2024, July 25, 2024, and August 9, 2024, and did not return or attempt to return the money. GEX 65 (stipulation). The video evidence further proves this. *See* GEXs 14, 15, 16, 17.

Third, there is ample evidence that the Defendant accepted that money corruptly because he accepted the money to be influenced in the performance of official acts and he intended to perform official acts. "Official Acts" include "exerting pressure on another official to perform an official act, or providing advice to another official, knowing or intending that such advice will form the basis for an official act by another official." ECF # 142 at 39 (OFFICIAL ACT – DEFINED). While the Defendant must intend to perform an official act, he need not actually perform the official act. *Id.* at 41; 46 (PROOF OF SUCCESS NOT REQUIRED).

The evidence indicates that Mr. Kamara intended to carry out official acts, but that he had

to tread carefully because he knew he was breaking the law. *See* 09/16/2026 PM Trial Tr. at 98:14-99:3 (Kamara testifying that the Defendant could not be as direct as he needed to be because he was breaking the law and had to "walk a fine line"). For example, the Defendant accepted $5,000 in cash from Kamara on July 17, 2024, and promised Kamara that "once you get – if you lock eyes and get your understanding, I gets to work," and that he would "start making some shit happen." GEX 15 at 19:46-19:52, GEX 15A at 34:3-10. As another example, the Defendant accepted $10,000 in cash on July 25, 2024. When Kamara handed the Defendant the money and asked him if he was going to "keep it going," the Defendant accepted the cash and reassured Kamara that he was working on his end of the corrupt agreement. GEX 16 at 13:43-13:58, GEX 16A at 24:7-16. As one more example, on August 18, 2024, after Kamara promised the Defendant that he would give him $141,000 dollars if he got confirmation about Kamara's government contract extensions, the Defendant responded, "So I haven't nagged -- spoke to DYRS, um, which I need to." *See* GEX 18 at 11:04-11:35, GEX 18A at 16:1-13.

There is additional evidence that the Defendant intended to perform Official Acts, as he stated that he had long-term strategy.[6] The evidence indicates the Defendant reached out to Kwelli Sneed, the then-interim director at the Office of Neighborhood Safety and Engagement (ONSE) and set up an in-person meeting, (GEXs 26, 33, 34), and reached out to the Department of Youth Rehabilitation Services (DYRS), speaking to the then-supervisory contract grant specialist, Anwar

---

6 For example, the Defendant repeatedly made statements indicating that he saw his bribery scheme as an ongoing effort; thus, providing further evidence for a reasonable juror to believe that he intended to be influenced in the performance of an official act. *See e.g.*, GEX 15 at 5:25-5:38, 15A at 8:16-9:5 (Defendant said he was "building a relationship" with the relevant city officials); GEX 16 at 1:15-1:25, GEX 16A at 4:15-17 (Defendant said "I wanted to bring you up to speed before we go in here about stuff I've been working on, trying to get you where you need to be."); and GEX 18 at 10:45-10:58, 18A at 15:16-20 (Defendant said, "Let me follow with DYRS too").

Walker. (GEXs 62, 63). These actions were not ordinary behavior for a Council Member, raising the inference that the Defendant took these steps in furtherance of his intention to ultimately perform an Official Act. *See* 09/18/2026 AM Trial Tr. at 105:5-7, 106:1-2 (Testimony of Ms. Sneed); *see also* 09/16/26 AM Trial Tr. at 137:9-19 (Testimony of Mr. Walker). The Defendant told Mr. Kamara repeatedly that he intended to apply pressure on Ms. Sneed by telling her that he would not support her confirmation to become director of ONSE, unless she extended Mr. Kamara's government contracts – a quintessential example of an official act. *See* GEX 16 at 4:06-4:20, GEX 16A at 9:14-21; *See also* GEX 17 at 5:25-6:12, GEX 17A at 10:1-25. There is also evidence that the Defendant intended to do an Official Act (pressure another government official), but was foiled by unforeseen circumstances on at least one occasion. *See* GEX 16 at 2:37-2:43, 16A at 6:24-7:3 (the Defendant explaining of his meeting with Ms. Sneed that, "I wasn't able to talk to her as direct as I needed to be because she had another person in the room").[7]

Establishing that there was sufficient evidence for a reasonable juror to find each of the elements of bribery – by the means of being influence in the performance of an "official act" – is enough to defeat the Defendant's motion. It is not necessary to assess each means by which an element may be done. In leading case involving Rule 29 motions, the Supreme Court held that, when adjudicating a Rule 29 Motion, the Court must determine whether "any rational trier of fact could have found the *essential elements* of the crime beyond a reasonable doubt." *Jackson v.*

---

[7] Defendant's intent to perform an Official Act is further proven by the admitted other crimes evidence: (1) he engaged in a 2019-bribery scheme with Kamara [ECF #142 at 50 (OTHER CRIMES EVIDENCE)] and (2) the inextricably intertwined other crimes evidence regarding the other bribery schemes he proposed to Kamara. *See e.g., United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The other crimes evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] *intent* to distribute and his knowledge about [a co-conspirator's] drug cache.") (emphasis added).

*Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Robertson*, 103 F.4th 1, 30 (D.C. Cir. 2023) (same). The Court, therefore, need not "determine the sufficiency of the evidence regarding a particular means . . . ." Sep. 30, 2026 Minute Order.[8]

Nevertheless, as set forth below, the government notes that there was also sufficient evidence to satisfy the elements of bribery committed by either of the other two means: (1) being influenced to commit a fraud on the United States and (2) being induced to violate an "Official Duty." First, there is ample evidence that the Defendant corruptly accepted the money from Kamara to be influenced to commit fraud against the United States.[9] Kamara's contracts were with the District of Columbia Government. *See e.g.*, GEXs 11, 12, 13, 35; *see also* 08/16/26 PM Trial Tr. at 16:21-25, 18:6-8 (Mr. Kamara's testimony). Mr. Walker testified that there was a standard process for contract renewals, which involved "collecting data" and "scoring the applications" and "performance measures. *See* 09/16/26 Trial Tr. at 125:8-10. Mr. Walker reiterated that the DYRS program team made the final decision about whether a contract or grant was renewed. *Id.* at 126:1. Despite this standard contracting process, and the quality control measures in place, the Defendant tried to subvert the process to ensure Kamara's contracts were extended in exchange for $156,000.

---

8 The defense offers no authority to the contrary. In fact, the case relied upon by the defense supports this result. *See Griffin v. United States*, 502 U.S. 46, 50 (1991) ("It also applied to the analogous situation at issue here: a general jury verdict under a single count charging the commission of an offense by two or more means.); *id.* at 57 ("Imagine the not unlikely case of a prosecution for defrauding an insurer through two means and for conspiring to defraud the insurer through the same two means; and imagine a failure of proof with respect to one of the means. Petitioner's proposal would produce the strange result of voiding a conviction on the conspiracy while sustaining a conviction on the substantive offense. We agree with the vast majority of Federal Courts of Appeals, which have made no exception to the Turner rule for multiple-object and multiple-overt-act conspiracies."). The defense also rehashes arguments regarding elements/means (see ECF # 143 at 13-16), that the Court has already rejected. *See* Sep. 4, 2026 Mem. Op. at 14-19.

9 *See* ECF # 142 at 44 (FRAUD ON THE UNITED STATES DEFINED).

*See e.g.*, GEX 16 at 1:15-1:25, GEX 16A at 4:15-17 (the Defendant telling Kamara that he wanted "wanted to bring you up to speed before we go in here about stuff I've been working on, trying to get you where you need to be") and 16 at 1:39-1:44, 16A at 5:5-8 (the Defendant telling Kamara, "I didn't get the details of that, but I just told them where I stood and what I needed to see happen.), 17 at 6:24-6:34, 17A 11:15-16 (the Defendant telling Kamara that he was "going to do mines"). As Mr. Walker testified, it was not normal for city council members to have input on contract extensions. *See* 09/16/26 Trial Tr. at 126:2-4.

Second, there is also evidence that the Defendant accepted the money from Mr. Kamara corruptly because he accepted the money to be induced to violate his official duty.[10] For example, the D.C. Council Code of Official Conduct prohibits conflicts of interest. GEX 1 at 2. Despite this prohibition, the evidence indicates the Defendant attempted to influence the decision to extend Mr. Kamara's contract extensions by assuring Mr. Kamara that he was reaching out to the necessary people, *see e.g.*, GEX 15 at 19:40-43, GEX 15A at 33:25-34:1 (the Defendant telling Mr. Kamara, "I'm on top of all -- yeah, one thing about me, I'm already -- I'm already moving"), GEX 17 at 5:25-5:33, GEX 17A at 10:1-3 (the Defendant telling Mr. Kamara, "I talked to -- I told you who I talked to. I talked to, uh -- I talked to so many people fucking with you, man, that I don't even like talking to"). GEX 16 at 9:13-9:29. All the while the Defendant was working to influence, and intending to influence, the contract extension process in favor of Mr. Kamara's contracts, he had a financial interest in the outcome—Mr. Kamara was paying him. *See e.g.*, GEXs 20 (bribery contract), 65 (stipulation).

As set forth above, the Court must determine if there was sufficient evidence of the essential elements of the crime presented. Since the sufficiency of the evidence to establish

[10] *See* ECF # 142 at 43 (VIOLATION OF OFFICIAL DUTY – DEFINED).

elements – not means – is evaluated, evidence regarding specific ways one means was done is even more attenuated and is of no moment. Nevertheless, we note that sufficient evidence was also presented regarding the other relevant violations of the D.C. Council Code of Conduct. First, the D.C. Council Code of Official Conduct prohibited the use of confidential information. GEX 1 at 7. Despite this prohibition, the Defendant told Mr. Kamara that "The issue they have with Life Deeds is that they feel like you need to get somebody to go meet on a regular basis with [Columbia Heights Village]." GEX 16 at 7:10-7:17, 16A at 14:21-23. As Mr. Kamara testified he had not heard about the issue that Columbia Heights Village had with Life Deeds before the Defendant told him. *See* Trial Tr. at 09/17/26 AM Trial Tr. at 8:21-24. Second, sufficient evidence was also presented regarding the last relevant violation of the D.C. Council Code of Conduct, which prohibits receiving anything of value in return for being influenced in performance of official acts, [ECF # 142 at 43 (VIOLATION OF OFFICIAL DUTY – DEFINED)]. *See* Discussion above discussing Official Acts, in the context of §201(b)(2)(A).

In sum, there was ample evidence, especially when viewed in the light most favorable to the government, for a rational trier of fact to have found the Defendant committed each of the essential elements of bribery beyond a reasonable doubt.

**IV. There is no basis to dismiss on Double Jeopardy grounds.**

Most often, the Double Jeopardy Clause of the Constitution does not prevent a retrial following a hung jury:

> The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *If the law were otherwise, "the purpose of law to protect society from those guilty of crimes frequently would be frustrated by*

*denying courts power to put the defendant to trial again*."

*Oregon v. Kennedy*, 456 U.S. 667, 671–72 (1982) (citations omitted) (emphasis added).

When, as here, the Defendant moves for a mistrial,[11] "there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." *Id.* 673. "[T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to *those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial*." *Id.* at 679 (emphasis added); *see also United States v. Wills*, 902 F.2d 1009 (D.C. Cir. 1990) (unpublished) ("[This exception] is designed as a disincentive to government misconduct that might goad a defendant into seeking a mistrial so as to give the government a second chance at the defendant."). The misconduct, therefore, must have specifically been intended to cause the defendant to seek a mistrial. *United States v. McCallum*, 721 F.3d 706, 711 (D.C. Cir. 2013) ("Even assuming, as we do, that a prosecutor's failure to meet his disclosure obligations bars retrial under the Double Jeopardy Clause if and only if the failure was intended to and did cause the defendant to move for and obtain a mistrial, the intent of the prosecutor is a question of fact to be decided by the district court in the first instance.").

Here, the government had no intention of provoking the Defendant to seek a mistrial. In fact, the government tried to avoid a mistrial, asking the Court not to declare a mistrial and instead give an anti-deadlock instruction (9/28/26 AM Trial Tr. at 3). In support of his claim that the government intended to provoke him to request a mistrial, the Defendant cites various actions and positions taken by the government before and during the trial. None of these actions, however,

11 Mr. Kohlman: "we do make a motion for a mistrial." 9/28/26 AM Trial Tr. at 2:17.

was taken to cause the Defendant to seek a mistrial. While the Defendant may disagree with legal positions and actions taken by the government, that does not transform them into attempts to goad him into seeking a mistrial. *Cf. Kennedy*, 456 U.S. at 674 ("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt.").

Moreover, each of the government's actions cited by the Defendant was entirely proper. First, in support of his Double Jeopardy motion, the Defendant cites the following governmental actions: (1) the government's successfully litigating the "elements/means" issue (Sep. 4, 2026 Mem. Op. at 14-21); (2) the government successfully moving for the admission of "overview evidence" (*id*. at 5-11); and (3) the government successfully opposing the Defendant's motion to dismiss the indictment as duplicitous (ECF # 65 at 5-8). *Id.*[12] In any event, none of these actions could possibly be construed as an attempt to provoke the defense into requesting a mistrial.

Second, the Defendant cites the admission of inextricably intertwined other crimes evidence and the accompanying instruction as evidence that the government intended provoke him into requesting a mistrial. The Defendant's claim that either the admission of the inextricably intertwined evidence or the accompanying instruction was improper is footless.

Inextricably intertwined evidence related to bribery schemes involving federal contracts (and contracts related to areas such as mental health, housing, and schools) was properly admitted into evidence. Those discussions between Kamara and the Defendant relating to additional bribery schemes were inextricably intertwined with the charged conduct – they are intrinsic. The discussions are intrinsic because they arose during the commission of the charged offense. *See*

[12] The Defendant's claim that the government "enticed the jury with bribery predicates for which it offered absolutely no serious evidence" (Def. Mem. at 34-35) is inaccurate. *See* Sec. III.A., *supra*.

*e.g.*, *United States v. Badru,* 97 F.3d 1471, 1474 (D.C. Cir. 1996) (finding that evidence is intrinsic when "arose out of the same transaction or series of transactions as the charged offense," and it is "necessary to complete the story of the crime of trial"); *United States v. Garces*, 133 F.3d 70, 77 (D.C. Cir. 1998) (holding that evidence that "was part of the story" was not other crimes evidence). Moreover, they have an obvious similarity to the charged offense. *See e.g.*, GEX 15 at 12:14-14:37, 15A at 20:1-23:4 (discussing how the defendant would receive 3% of the value of mental health contracts – just as he did for the contracts in the charged offense).

Intrinsic evidence, such as the discussion of other bribery schemes, may properly be used to prove commission of the charged offense, including for example: motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. *See e.g.*, *United States v. Allen,* 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] *intent* to distribute and his *knowledge* about [a co-conspirator's] drug cache.") (emphasis added); *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994) ("The testimony revealing that Early used his cousin's Kaiser Permanente health insurance card to obtain medical treatment was intrinsic to the charged offense because it helped establish his *identity* as the driver of the Mazda . . .") (emphasis added). The notice requirement of Fed. R. Evidence 404(b) does not apply to inextricably intertwined evidence. *See e.g.*, *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) ("No [404(b)] notice is required, however, for evidence of an 'intrinsic act,' that is, an act that is 'part of the crime charged.'"); Fed. R. Evid. 404 ADVISORY COMMITTEE NOTES, 1991 Amendments ( notice requirement "does not extend to evidence of acts

which are 'intrinsic' to the charged offense."). But the inextricably intertwined evidence was set forth in the Indictment.[13]

Likewise, the accompanying instruction was proper. Other crimes evidence is customarily described in the accompanying instruction. *See e.g.*, ECF # 142 at 50 [OTHER CRIMES EVIDENCE] ("You have heard evidence regarding Mr. White's alleged *receipt of a bribe* from Mr. Kamara in 2019") (emphasis added); Criminal Jury Instructions for the District of Columbia (the "Redbook") Fifth Edition 2025 Release, Instruction 2.321 ("You have heard evidence that [name of defendant] [*describe other crimes evidence*]) (If you find that [name of defendant] [d*escribe the other crimes conduct*]) (emphasis added)).[14]

---

13 The defense seems to conflate inextricably intertwined other crimes evidence with evidence that directly establishes an element of the offense. But, as the government has previously explained, while the evidence of other bribery schemes is "inextricably intertwined" with the charged offense; the Defendant is not charged with those other bribery schemes. 9/18/26 PM Trial Tr. at 27:5-15. *See also* Gov. Supplement regarding Intrinsic Evidence [ECF # 122].

14 The Defendant's prolix recitation regarding the genesis of this instruction (Det. Mem. [ECF # 143] at 8-10, 35-36; Declaration [ECF # 143-1] is irrelevant – to the extent it is even accurate.

## V. Conclusion

The Defendant's own words and actions – alone, which were captured on tape, provided more than sufficient evidence for a reasonable juror to find beyond a reasonable doubt that he is guilty. There is no evidence that the government intended to provoke the Defendant into seeking a mistrial. Both of the Defendant's motions should, therefore, be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

John Crabb Jr.
N.Y. Bar No. 2367670
Rebecca G. Ross
N.Y. Bar No. 5590666
601 D Street, N.W.
Washington, D.C. 20530
john.d.crabb@usdoj.gov
Rebecca.Ross2@usdoj.gov
(202) 252-1794